1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  AMAZON.COM, INC., a Delaware
corporation; and WEBER-STEPHEN
10  PRODUCTS LLC, a Delaware Limited
Liability Company,

11                                    Plaintiffs,

12        v.

13  Individuals and entities doing business as the
following Amazon Selling Accounts:
14  ACKARY; AVANTAWAY; CCBAO;
GRILLIKE; HIMIRL; HOZOEE; HZHJIY;
15  MELLSSA; MUSTBUILTY; NEXPLAS;
PSHIP; VIDVIE-US; and DOES 1-10,
16
17                                    Defendants.

No.

**COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF**

18
19                        **I.      INTRODUCTION**

20        1.      This case involves Defendants' unlawful and expressly prohibited sale of grill

21  covers on Amazon.com that illegally bear a registered trademark of Weber-Stephen Products

22  LLC ("Weber").  Amazon and Weber jointly bring this lawsuit to permanently prevent and

23  enjoin Defendants from causing future harm to Amazon's and Weber's customers, reputations,

24  and intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

25        2.      The Amazon store offers products and services to customers in more than 100

26  countries around the globe.  Some of the products are sold directly by Amazon, while others are

27  sold by Amazon's numerous third-party selling partners.  The Amazon brand is one of the most

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 1

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

well-recognized, valuable, and trusted brands in the world.  In order to protect customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit goods from being sold in its store.  In 2020 alone, Amazon invested over $700 million and employed more than 10,000 employees to protect its store from fraud and abuse.  Amazon stopped over six million suspected bad-actor selling accounts before they published a single listing for sale and blocked more than ten billion suspected bad listings before they were published.

3.      Weber is a leading worldwide designer, developer, and manufacturer of outdoor grills and accessories.  Weber's founder, George Stephen, began making and selling grills under the Weber name in the 1950s.  Since that time, Weber has developed and introduced numerous revolutionary and iconic products, including its three-legged kettle grill design and its lines of gas, charcoal, wood pellet, electric, and portable grills and accessories.  Weber designs, engineers, and manufactures grills and accessories built with the durability, workmanship, and quality that matter to Weber's customers.  Relevant to this complaint, Weber manufactures lightweight yet durable premium grill covers that customers use to protect their Weber grills from rain, snow, and sun.  Today, the Weber brand is one of America's most recognized and trusted brands in outdoor grills and accessories.

4.      Weber owns, manages, enforces, licenses, and maintains IP, including various trademarks.  Relevant to this Complaint, Weber owns the following registered trademark ("Weber Trademark").

| **Mark** | **Registration No. (International Class)** |
| --- | --- |
| WEBER | 1,464,197 (IC 011) |

A true and correct copy of the registration certificate for the Weber Trademark is attached as **Exhibit A**.

5.      Between October 2018 and September 2021, Defendants collectively advertised, marketed, offered, sold, and distributed at least eleven different types of grill covers in the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 2

Amazon store using their Amazon selling accounts ("Selling Accounts").  Defendants used the Weber Trademark, without authorization, to deceive customers about the authenticity and origin of the products and to create a false affiliation with Weber.

6.      As a result of their illegal actions, Defendants have infringed and misused Weber's IP; willfully deceived and harmed Amazon, Weber, and their customers; compromised the integrity of the Amazon store; and undermined the trust that customers place in Amazon and Weber.  Defendants' illegal actions have caused Amazon and Weber to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, Weber, and their customers.

## II.      PARTIES

7.      Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington.  Through its subsidiaries, Amazon.com, Inc. owns and operates the Amazon.com website, counterpart international websites, and Amazon store (collectively, "Amazon").

8.      Weber is a Delaware limited liability company with its principal place of business in Palatine, Illinois.  Weber is a leading worldwide designer, developer, and manufacturer of outdoor grills and accessories, including grill covers, sold under the Weber brand name.

9.      Defendants are a collection of individuals who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint.  Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability, including without limitation respondeat superior, vicarious liability, and/or contributory infringement.

10.      On information and belief, at least one Defendant is an individual or an entity doing business as "Ackary" (referred to herein as the "Ackary Defendant" or "Ackary Selling Account") that provided a business address in Jiangsu, China.  On further information and belief, the Ackary Defendant personally participated in and/or had the right and ability to

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

11.     On information and belief, at least one Defendant is an individual or an entity doing business as "Avantaway" (referred to herein as the "Avantaway Defendant" or "Avantaway Selling Account") that provided a business address in Guangdong, China.  On further information and belief, the Avantaway Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

12.     On information and belief, at least one Defendant is an individual or an entity doing business as "CCBAO" (referred to herein as the "CCBAO Defendant" or "CCBAO Selling Account") that provided a business address in Beijing, China.  On further information and belief, the CCBAO Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

13.     On information and belief, at least one Defendant is an individual or an entity doing business as "Grillike" (referred to herein as the "Grillike Defendant" or "Grillike Selling Account") that provided a business address in Guangdong, China.  On further information and belief, the Grillike Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

14.     On information and belief, at least one Defendant is an individual or an entity doing business as "HIMIRL" (referred to herein as the "HIMIRL Defendant" or "HIMIRL Selling Account") that provided a business address in Anhui, China.  On further information and belief, the HIMIRL Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 4

15.     On information and belief, at least one Defendant is an individual or an entity doing business as "Hozoee" (referred to herein as the "Hozoee Defendant" or "Hozoee Selling Account") that provided a business address in Huangdong, China.  On further information and belief, the Hozoee Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

16.     On information and belief, at least one Defendant is an individual or an entity doing business as "HZHJIY" (referred to herein as the "HZHJIY Defendant" or "HZHJIY Selling Account") that provided a business address in Zhejiang, China.  On further information and belief, the HZHJIY Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

17.     On information and belief, at least one Defendant is an individual or an entity doing business as "MellSsa" (referred to herein as the "MellSsa Defendant" or "MellSsa Selling Account").  On further information and belief, the individual or entity behind the MellSsa Selling Account falsely represented its location as Pompano Beach, Florida, and has deliberately registered additional false information with Amazon as part of a scheme to mislead Plaintiffs.  The true location of the MellSsa Defendant is presently unknown.  On further information and belief, the MellSsa Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

18.     On information and belief, at least one Defendant is an individual or an entity doing business as "Mustbuilty" (referred to herein as the "Mustbuilty Defendant" or "Mustbuilty Selling Account") that provided a business address in Jiangsu, China.  On further information and belief, the Mustbuilty Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 5

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

19.     On information and belief, at least one Defendant is an individual or an entity doing business as "Nexplas" (referred to herein as the "Nexplas Defendant" or "Nexplas Selling Account") that provided a business address in Guangdong, China.  On further information and belief, the Nexplas Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

20.     On information and belief, at least one Defendant is an individual or an entity doing business as "PShip" (referred to herein as the "PShip Defendant" or "PShip Selling Account") that provided a business address in Jiangxi, China.  On further information and belief, the PShip Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

21.     On information and belief, at least one Defendant is an individual or an entity doing business as "VIDVIE-US" (referred to herein as the "VIDVIE-US Defendant" or "VIDVIE-US Selling Account") that provided a business address in Zhejiang, China.  On further information and belief, the VIDVIE-US Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

22.     On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, and sell counterfeit Weber products.  The identities of the Doe Defendants are presently unknown to Plaintiffs. The Doe Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

### III.   JURISDICTION AND VENUE

23.     The Court has subject matter jurisdiction over Amazon's and Weber's Lanham Act claims for 1) trademark infringement; and 2) false designation and false advertising pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  The Court also has subject matter jurisdiction over Amazon's and Weber's claim for violation of the Washington Consumer Protection Act pursuant to 28 U.S.C. §§ 1332 and 1367.

24.     The Court has personal jurisdiction over all Defendants because they transacted business and committed tortious acts directed to the State of Washington, and Amazon's and Weber's claims arise from those activities.  Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and marketed, sold, and distributed through the Amazon store inauthentic grill covers bearing counterfeit versions of the Weber Trademark and which otherwise infringed Weber's IP.  Several of the Defendants caused shipment of these counterfeit products to customers in Washington.  Each of the Defendants committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon and Weber substantial injury in Washington.

25.     Further, the named Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of intellectual property rights are state or federal courts located in King County, Washington.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

27.     Venue is also proper in this Court with respect to Defendants by virtue of the allegations stated in paragraph 24 above, which are incorporated herein.

28.     Pursuant to Local Civil Rule 3(d), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## IV.    FACTS

### A.    Amazon's Efforts to Prevent the Sale of Counterfeit Goods

29.    Amazon works hard to build and protect the reputation of its store as a place where customers can conveniently select from a wide array of authentic goods and services at competitive prices.  Amazon invests a vast amount of resources to ensure that when customers make purchases through the Amazon store—either directly from Amazon or from one of its millions of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

30.    A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon Selling Accounts to advertise, market, offer, and sell counterfeit products.  These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers.  This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon, and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

31.    Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products ever being offered to customers through the Amazon store.  Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in the Amazon store.  Amazon's systems automatically and continuously scan thousands of data points to detect and remove counterfeits from its store and to terminate the Selling Accounts of bad actors before they can offer counterfeit products.  When Amazon identifies issues based on this feedback, it takes action to address them.  Amazon uses this intelligence also to improve its proactive prevention controls.

32.    In 2017, Amazon launched the Amazon Brand Registry, a free service to any rights owner with a government-registered trademark, regardless of the brand's relationship

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

with Amazon.  Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP.  Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for and accurately report potentially infringing products using state-of-the-art image search technology.  More than 500,000 brands are enrolled in Brand Registry, and those brands are finding and reporting 99% fewer suspected infringements since the launch of Brand Registry.

33.    In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products.  Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased.  In 2020, over 15,000 brands were using Transparency, enabling the protection of more than 500 million product units.

34.    In 2019, Amazon launched Amazon Project Zero, a program to empower brands to help Amazon drive counterfeits to zero.  Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from the Amazon store.  In 2020, there were more than 18,000 brands enrolled in Project Zero.  For every listing removed by a brand, Amazon's automated protections removed more than 600 listings through scaled technology and machine learning, stopping those listings from appearing in the Amazon store.

35.    Amazon also uses industry-leading technology to analyze hundreds of unique data points and robust processes to verify information provided by potential sellers.  Amazon constantly innovates on these tools and systems.  For example, Amazon now connects one-on-one with prospective sellers through video chat or in person at an Amazon office to verify sellers' identities and government-issued documentation.  Amazon also verifies new and existing sellers' addresses by sending information, including a unique code, to the sellers' addresses.  These measures have made it more difficult for bad actors to hide.  In 2020, only 6% of attempted new seller account registrations passed Amazon's robust seller verification

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

processes and listed products for sale.  Amazon prevented over six million attempts to create new selling accounts, stopping bad actors before they published a single product for sale, and blocked more than 10 billion suspected bad listings before they were published for sale in the Amazon store.

36.     Once a seller begins selling in the Amazon store, Amazon continues to monitor the selling account's activities for risks.  If Amazon identifies a bad actor, it immediately closes that actor's selling account, withholds funds disbursement, and investigates whether other accounts are involved in unlawful activities.

37.     In addition to these measures, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity.  Lawsuits like this one are integral components of Amazon's efforts to combat counterfeits.

**B.     Weber and Its Anti-Counterfeiting Efforts**

38.     Weber goes to great lengths to protect customers from counterfeits of its products and is committed to leading efforts to combat counterfeit products.  Weber utilizes both internal and external resources to combat counterfeits, piracy, and distribution abuse online.  This includes trained internal staff who consistently monitor online retailer sites around the world for IP infringements and counterfeit sellers.  Weber also works with a third-party brand protection service vendor on the detection and removal of product listings violating Weber's IP rights.

39.     When Weber is alerted to a suspected counterfeit product, it promptly investigates the matter and takes appropriate action.

40.     Weber's product design and manufacturing process is also set up to combat counterfeits, with products and product packaging updated on a regular basis.

41.     Weber is currently enrolled in Amazon Brand Registry and Project Zero and used these tools to combat the counterfeiting activity described in this Complaint.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

**C.   Defendants Created Selling Accounts and Agreed Not to Sell Counterfeit Goods**

42.   Defendants controlled and operated the twelve Selling Accounts detailed in section D below through which they sought to advertise, market, sell, and distribute inauthentic grill covers bearing unauthorized depictions of the Weber Trademark.  In connection with these Selling Accounts, Defendants provided names, email addresses, and banking information for each account.

43.   To become a third-party seller in the Amazon store, sellers are required to agree to the BSA, which governs the applicant's access to and use of Amazon's services and states Amazon's rules for selling through the website.  By entering into the BSA, each seller represents and warrants that it "will comply with all applicable laws in [the] performance of [its] obligations and exercise of [its] rights" under the BSA.  True and correct copies of the versions of the BSA in effect when Defendants last sold products through their Selling Accounts are attached as **Exhibit B**.

44.   The BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**.  The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon store:

- The sale of counterfeit products is strictly prohibited.

- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]

- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfilment centers, and other legal consequences.

*Id.*

45.   Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon store together with the consequences of doing so:

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

- **Sell Only Authentic and Legal Products.** It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:

  o Bootlegs, fakes, or pirated copies of products or content

  o Products that have been illegally replicated, reproduced, or manufactured

  o Products that infringe another party's intellectual property rights

- **Maintain and Provide Inventory Records.** Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.

- **Consequences of Selling Inauthentic Products.** If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.

- **Amazon Takes Action to Protect Customers and Rights Owners.** Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result of our detection and enforcement activities, Amazon may:

  o Remove suspect listings.

  o Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- **Reporting Inauthentic Products.** We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

*Id.*

46.    When they registered as third-party sellers in the Amazon store and established their Selling Accounts, Defendants agreed not to advertise, market, offer, sell or distribute counterfeit products.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 12

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

### D.    Verification of Counterfeit Weber Grill Covers Sold Through Defendants' Selling Accounts

47.    Between October 2018 and September 2021, Defendants collectively advertised, marketed, offered, sold, and distributed at least eleven different types of counterfeit grill covers in the Amazon store using the Weber Trademark.  As set forth below, Weber has conducted test purchases from the Defendants' Selling Accounts and determined that the products were counterfeits and bore a counterfeit Weber Trademark.

### i.    Ackary Selling Account

48.    At all times described herein, the Ackary Selling Account was controlled and operated by the Ackary Defendant and, on information and belief, other unknown parties.

49.    Between June 2020 and February 2021, the Ackary Defendant advertised, marketed, offered, and sold inauthentic grill covers in the Amazon store bearing the unauthorized Weber Trademark through the Ackary Selling Account, including the grill cover model 7152.  Weber conducted a test purchase of a model 7152 grill cover from the Ackary Selling Account and, based on a physical examination, determined that it was a counterfeit. Although the product contained reproductions of the Weber Trademark, the product and the product's packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the product's tag was inconsistent with Weber's manufacturing specifications.

### ii.    Avantaway Selling Account

50.    At all times described herein, the Avantaway Selling Account was controlled and operated by the Avantaway Defendant and, on information and belief, other unknown parties.

51.    Between September 2020 and February 2021, the Avantaway Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the Avantaway Selling Account, including the grill cover models 7106 and 7107.  Weber conducted a test purchase of model 7106 and 7107 grill covers from the Avantaway Selling Account and, based on a physical examination, determined that they were counterfeits.  Although the products contained reproductions of the Weber

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 13

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Trademark, the products and the products' packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the products' tags was inconsistent with Weber's manufacturing specifications.  Finally, the grill covers themselves were made of a substandard material that differs from the material Weber uses in its genuine grill covers.

### iii.     CCBAO Selling Account

52.     At all times described herein, the CCBAO Selling Account was controlled and operated by the CCBAO Defendant and, on information and belief, other unknown parties.

53.     Between September 2020 and April 2021, the CCBAO Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the CCBAO Selling Account, including the grill cover models 7130 and 7149.  Weber conducted a test purchase of model 7130 and 7149 grill covers from the CCBAO Selling Account and, based on a physical examination, determined that they were counterfeits.  Although the products contained reproductions of the Weber Trademark, the products and the products' packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the products' tags was inconsistent with Weber's manufacturing specifications.  Finally, the 7130 grill cover itself was made of a substandard material that differs from the material Weber uses in its genuine grill covers.

### iv.     Grillike Selling Account

54.     At all times described herein, the Grillike Selling Account was controlled and operated by the Grillike Defendant and, on information and belief, other unknown parties.

Between December 2020 and September 2021, the Grillike Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the Grillike Selling Account, including the grill cover model 7153.  Weber conducted a test purchase of model 7153 grill cover from the Grillike Selling Account and, based on a physical examination, determined that it was a counterfeit. Although the product contained reproductions of the Weber Trademark, the product and the

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

product's packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the product's tag was inconsistent with Weber's manufacturing specifications.

### v.  HIMIRL Selling Account

55.     At all times described herein, the HIMIRL Selling Account was controlled and operated by the HIMIRL Defendant and, on information and belief, other unknown parties.

56.     Between May 2020 and February 2021, the HIMIRL Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the HIMIRL Selling Account, including grill cover model 7107.  Weber conducted a test purchase of a model 7107 grill cover from the HIMIRL Selling Account and, based on a physical examination, determined it was a counterfeit.  Although the product contained reproductions of the Weber Trademark, the product and the product's packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the product's tag was inconsistent with Weber's manufacturing specifications.  Finally, the grill cover itself was made of a substandard material that differs from the material Weber uses in its genuine grill covers.

### vi.  Hozoee Selling Account

57.     At all times described herein, the Hozoee Selling Account was controlled and operated by the Hozoee Defendant and, on information and belief, other unknown parties.

58.     Between January 2019 and February 2021, the Hozoee Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the Hozoee Selling Account, including the grill cover models 7109 and 7552.  Weber conducted test purchases of model 7109 and 7552 grill covers from the Hozoee Selling Account and, based on a physical examination, determined they were counterfeits.  Although the products contained reproductions of the Weber Trademark, the products and the products' packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the products' tags was inconsistent with Weber's manufacturing specifications.  Finally, the 7552 grill cover itself was made of a substandard

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

material that differs from the material Weber uses in its genuine grill covers.

### vii.   HZHJIY Selling Account

59.     At all times described herein, the HZHJIY Selling Account was controlled and operated by the HZHJIY Defendant and, on information and belief, other unknown parties.

60.     Between May 2020 and May 2021, the HZHJIY Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the HZHJIY Selling Account, including the grill cover model 7131.  Weber conducted a test purchase of a model 7131 grill cover from the HZHJIY Selling Account and, based on a physical examination, determined that it was a counterfeit. Although the product contained reproductions of the Weber Trademark, the product and the product's packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the product's tag was inconsistent with Weber's manufacturing specifications. Finally, the grill cover itself was made of a substandard material that differs from the material Weber uses in its genuine grill covers.

### viii.   MellSsa Selling Account

61.     At all times described herein, the MellSsa Selling Account was controlled and operated by the MellSsa Defendant and, on information and belief, other unknown parties.

62.     Between April 2020 and May 2021, the MellSsa Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the MellSsa Selling Account, including the grill cover model 7130.  Weber conducted a test purchase of a model 7130 grill cover from the MellSsa Selling Account and, based on a physical examination, determined that it was a counterfeit. Although the product contained reproductions of the Weber Trademark, the product and the product's packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the product's tag was inconsistent with Weber's manufacturing specifications.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

ix.       **Mustbuilty Selling Account**

63.       At all times described herein, the Mustbuilty Selling Account was controlled and operated by the Mustbuilty Defendant and, on information and belief, other unknown parties.

64.       Between September and November 2020, the Mustbuilty Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the Mustbuilty Selling Account, including the grill cover models 7107 and 7151.  Weber conducted a test purchase of model 7107 and 7151 grill covers from the Mustbuilty Selling Account and, based on a physical examination, determined that they were counterfeits.  Although the products contained reproductions of the Weber Trademark, the products and the products' packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the products' tags was inconsistent with Weber's manufacturing specifications.

x.       **Nexplas Selling Account**

65.       At all times described herein, the Nexplas Selling Account was controlled and operated by the Nexplas Defendant and, on information and belief, other unknown parties.

66.       Between December 2019 and February 2021, the Nexplas Defendant advertised, marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the unauthorized Weber Trademark through the Nexplas Selling Account, including the grill cover models 7108 and 7552.  Weber conducted a test purchase of model 7108 and 7552 grill covers from the Nexplas Selling Account and, based on a physical examination, determined that they were counterfeits.  Although the products contained reproductions of the Weber Trademark, the products and the products' packaging differed from authentic Weber-brand grill covers.  In addition, the detail contained on the products' tags was inconsistent with Weber's manufacturing specifications.  Finally, the grill covers themselves were made of a substandard material that differs from the material Weber uses in its genuine grill covers.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1

### xi.      Pship Selling Account

2   67.      At all times described herein, the Pship Selling Account was controlled and

3   operated by the Pship Defendant and, on information and belief, other unknown parties.

4   68.      Between January 2020 and May 2021, the Pship Defendant advertised,

5   marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the

6   unauthorized Weber Trademark through the Pship Selling Account, including the grill cover

7   model 7130.  Weber conducted a test purchase of a model 7130 grill cover from the Pship

8   Selling Account and, based on a physical examination, determined that it was a counterfeit.

9   Although the product contained reproductions of the Weber Trademark, the product and the

10   product's packaging differed from authentic Weber-brand grill covers.  In addition, the detail

11   contained on the product's tag was inconsistent with Weber's manufacturing specifications.

12   Finally, the grill cover itself was made of a substandard material that differs from the material

13   Weber uses in its genuine grill covers.

14   ### xii.      VIDVIE-US Selling Account

15   69.      At all times described herein, the VIDVIE-US Selling Account was controlled

16   and operated by the VIDVIE-US Defendant and, on information and belief, other unknown

17   parties.

18   70.      Between May and August 2021, the VIDVIE-US Defendant advertised,

19   marketed, offered, and sold in the Amazon store inauthentic grill covers bearing the

20   unauthorized Weber Trademark through the VIDVIE-US Selling Account, including the grill

21   cover model 7130.  Weber conducted a test purchase of a model 7130 grill cover from the

22   VIDVIE-US Selling Account and, based on a physical examination, determined that it was a

23   counterfeit.  Although the product contained reproductions of the Weber Trademark, the

24   product and the product's packaging differed from authentic Weber-brand grill covers.  In

25   addition, the detail contained on the product's tag was inconsistent with Weber's

26   manufacturing specifications.

27

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 18

E.      **Defendants' Coordinated Sale of Counterfeit Weber Products**

71.     On information and belief, Defendants operated in concert with one another in their marketing, selling, and distribution of inauthentic versions of Weber grill covers.

72.     As part of their scheme to mislead customers, multiple Defendants falsely advertised in the Amazon store their counterfeit Weber-branded grill covers as authentic products, as exemplified below in Figures 1 and 2.

*Figure 1 is one of the images uploaded by the Pship Defendant to advertise counterfeit 7130 grill covers in the Amazon store.*



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

*Figure 2 is a screenshot of Weber's listing of
the 7130 grill cover on its official website.*



73.     Moreover, Defendants engaged in a coordinated scheme closely associated with a logistics provider that operated in Hillsboro, Oregon (the "Hillsboro Facility") and an individual identified by variations of the alias "Chen Luming" (herein referred to as "Luming"). For instance, Defendants either: (1) managed the distribution of their counterfeit Weber grill covers from the Hillsboro Facility to Amazon fulfillment centers for shipment and delivery to customers and identified Luming as the person who shipped the products; or (2) deceitfully identified Luming as a credit card holder associated with the Selling Accounts and the Hillsboro Facility as the billing address for the credit card account. Based on information and belief, Luming is a fictitious identity used by the true agents behind Defendants' counterfeit scheme to purposefully mislead Plaintiffs as to their true identities.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 20

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

**F.     Amazon and Weber Shut Down Defendants' Selling Accounts**

74.     The Defendants behind the Selling Accounts falsely represented to Amazon and its customers that the grill covers they marketed and sold were genuine products made by Weber.  Defendants also knowingly and willfully used Weber's IP in connection with the advertisement, marketing, distribution, offering for sale, and sale of the counterfeit Weber products.

75.     At all times, Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon store.  Defendants have deceived Amazon's and Weber's customers, infringed and misused Weber's IP rights, harmed the integrity of and customer trust in the Amazon store, and tarnished Amazon's and Weber's brands.

76.     Amazon, after receiving notice of Defendants' illegal scheme, verified Defendants' unlawful sale of the counterfeit Weber product and promptly blocked Defendants' Selling Accounts.  In doing so, Amazon exercised its rights under the BSA to protect customers and the reputations of Amazon and Weber.

## V.     CLAIMS

### FIRST CLAIM
#### *(by Weber against all Defendants)*
#### Trademark Infringement – 15 U.S.C. § 1114

77.     Plaintiff Weber incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

78.     Defendants' activities constitute infringement of the Weber Trademark as described in the paragraphs above.

79.     Weber advertises, markets, offers, distributes, and sells its products using the Weber Trademark described above and uses that trademark to distinguish its products from the products and related items of others in the same or related fields.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 21

80.     Because of Weber's long, continuous, and exclusive use of the Weber Trademark identified in this Complaint, the Weber Trademark has come to mean, and is understood by customers and the public to signify, products from Weber.

81.     Defendants unlawfully advertised, marketed, offered, sold, and distributed inauthentic grill covers, which bear counterfeit versions of the Weber Trademark, with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity.  Specifically, Defendants intended customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by Weber and likely caused such erroneous customer beliefs.

82.     As a result of Defendants' wrongful conduct, Weber is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b).  Alternatively, Weber is entitled to statutory damages under 15 U.S.C. § 1117(c).

83.     Weber is further entitled to injunctive relief, including an order impounding all infringing products and promotional materials in Defendants' possession.  Weber has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Weber Trademark is unique and valuable property that has no readily determinable market value; (b) Defendants' infringement constitutes harm to Weber and Weber's reputation and goodwill such that Weber could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Weber, is likely to be continuing.

## SECOND CLAIM
### *(by Weber against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

84.     Plaintiff Weber incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 22

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

85.     Weber owns the Weber Trademark and advertises, markets, offers, distributes, and sells its products using the Weber Trademark described above, and uses that trademark to distinguish its products from the products and related items of others in the same or related fields.

86.     Because of Weber's long, continuous, and exclusive use of the Weber Trademark, it has come to mean, and is understood by customers, end users, and the public, to signify products from Weber.

87.     Defendants' wrongful conduct includes the infringement of the Weber Trademark in connection with Defendants' commercial advertising or promotion, offering for sale, and sale of counterfeit Weber products in interstate commerce.

88.     In advertising, marketing, offering, and selling products bearing counterfeit versions of the Weber Trademark, Defendants have used and, on information and belief, continue to use the trademark referenced above to compete unfairly with Weber and to deceive customers.  Upon information and belief, Defendants' wrongful conduct misleads and confuses customers and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, distributed, or sold in connection with the Weber Trademark and wrongfully trades upon Weber's goodwill and business reputation.

89.     Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by Weber, all in violation of 15 U.S.C. § 1125(a)(1)(A).

90.     Defendants' conduct also constitutes willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

91.     Weber is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Weber.  The injury to Weber is irreparable and, on

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

information and belief, is continuing.  An award of monetary damages cannot fully compensate Weber for its injuries, and Weber lacks an adequate remedy at law.

92.     Weber is further entitled to recover Defendants' profits, Weber's damages for its losses, and Weber's costs to investigate and remediate Defendants' conduct and bring this action, including its attorney's fees, in an amount to be determined.  Weber is also entitled to the trebling of any damages award as allowed by law.

### THIRD CLAIM
*(by Amazon against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

93.     Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

94.     Amazon's reputation for trustworthiness is at the heart of its relationship with customers.  Defendants' actions in selling counterfeits pose a threat to Amazon's reputation because they undermine and jeopardize customer trust in the Amazon store.

95.     Specifically, Defendants deceived Amazon and its customers about the authenticity of the products they were advertising, marketing, offering, and selling, in direct and willful violation of the BSA and Amazon's Anti-Counterfeiting Policies.  Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell their products in the Amazon store because Amazon would not have allowed Defendants to do so but for their deceptive acts.

96.     In advertising, marketing, offering, and selling counterfeit Weber products in the Amazon store, Defendants made false and misleading statements of fact about the origin, sponsorship, or approval of those products in violation of 15 U.S.C. § 1125(a)(1)(A).

97.     Defendants' acts also constitute willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

98.     As described above, Defendants, through their illegal acts, have willfully deceived Amazon and its customers, jeopardized the trust that customers place in the Amazon

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 24

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

store, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. Defendants' misconduct has also caused Amazon to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon and its customers. Defendants' illegal acts have caused irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish other seller accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

99.     Amazon is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with its attorneys' fees and costs in bringing this lawsuit.

### FOURTH CLAIM
### *(by Weber and Amazon against all Defendants)*
### Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.*

100.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

101.     Defendants' advertising, marketing, offering, distribution, and selling of counterfeit Weber products constitute an unfair method of competition and unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

102.     Defendants' advertising, marketing, offering, distribution, and selling of counterfeit Weber products harms the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

103.     Defendants' advertising, marketing, offering, distribution, and selling of counterfeit Weber products directly and proximately causes harm to and tarnishes Plaintiffs' reputations and brands, and damages their business and property interests and rights.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

104.    Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover their attorneys' fees and costs.  Weber further seeks to recover its actual damages, trebled.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.    That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all others in active concert or participation with them, from:

(i)    selling products in the Amazon store;

(ii)    selling products to Amazon or any affiliate;

(iii)    opening or attempting to open any Amazon selling accounts;

(iv)    manufacturing, distributing, offering to sell, or selling any product using Weber's brand or the Weber Trademark, or which otherwise infringes Weber's intellectual property, on any platform or in any medium;

(v)    assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iv) above;

B.    That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

C.    That the Court enter an order pursuant to 15 U.S.C. § 1116 impounding all counterfeit and infringing products bearing the Weber Trademark or that otherwise infringe Weber's IP, and any related materials, including business records, in Defendants' possession or under their control;

D.    That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

E.      That Defendants be required to pay all general, special, and actual damages that Weber has sustained or will sustain as a consequence of Defendants' unlawful acts, together with statutory damages, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(b), RCW 19.86.020, or otherwise allowed by law;

F.      That Defendants be required to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

G.      That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

H.      That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

DATED this 9th day of November, 2021.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*

*s/ Scott R. Commerson*
Scott R. Commerson, WSBA #58085
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

*s/ Eric A. Franz*
Eric A. Franz, WSBA #52755
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1604
Tel: (206) 757-8070
Fax: (206) 757-7070
Email: ericfranz@dwt.com

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax