UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation; and WEBER-STEPHEN PRODUCTS LLC, a Delaware limited liability company,<br><br>            Plaintiffs,<br><br>   v.<br><br>GUIZHEN LI, an individual d/b/a Selling Accounts Avantaway, CCBAO, Grillike, HIMIRL, Hozoee, HZHJIY, MellSsa, Mustbuilty, Nexplas, and VIDVIE-US; QIUPING ZHAN, an individual d/b/a Selling Accounts Ackary and Pship; and CHANGMING CHEN, an individual d/b/a Selling Account Avantaway,<br><br>            Defendants. | Lead Case No. 2:21-cv-01512-TL<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION |
| AMAZON.COM, INC., a Delaware corporation; AMAZON.COM SERVICES LLC, a Delaware limited liability company; and WEBER-STEPHEN PRODUCTS LLC, a Delaware Limited Liability Company,<br><br>            Plaintiffs,<br><br>   v.<br><br>YAHUI CUI, an individual d/b/a Selling Accounts PDream/Phoniy, Mustudy, and STW Hardware/Acover,<br><br>            Defendant. | Consolidated Cases:<br>No. 2:22-cv-00674-TL<br>No. 2:22-cv-00675-TL<br>No. 2:22-cv-00676-TL |

ORDER ON MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION - 1

This is an action for damages and injunctive relief for trademark infringement and related claims involving Weber-branded outdoor grills and accessories. This matter is before the Court on Plaintiffs Amazon.com, Inc., and Amazon Services LLC (together, "Amazon Plaintiffs") and Weber-Stephens Products LLC's ("Weber") Motion for Default Judgment and Permanent Injunction Against Defendants.[1] Dkt. No. 39. Defendants have not appeared or responded to the motion. Having reviewed the relevant record, the Court GRANTS the motion.

## I. BACKGROUND

In recent months, the Western District of Washington has seen "numerous cases brought by Amazon.com, Inc. and Amazon.com Services, LLC, together with other intellectual property owners, against third parties allegedly facilitating the sale of counterfeit products in the Amazon.com store." General Order 03-23, at 1 (Mar. 7, 2023). The cases are referred to collectively as the "Counterfeit Enforcement Actions." *Id.* This is one of those cases.

Further, the instant motion is the latest in a series of recent motions for default judgment by Amazon Plaintiffs and/or its selling partners that have been handled by courts in this District, including at least two motions recently decided by this Court. *See Amazon Techs. Inc. v. Qiang*, No. C23-1060, 2024 WL 1606109 (W.D. Wash. Apr. 12, 2024); *Amazon.com, Inc. v. Dong*, No. C23-159, 2024 WL 775900 (W.D. Wash. Feb. 26, 2024); *see also, e.g.*, *Amazon.com Inc. v. Zhi*, No. C20-1215, 2024 WL 943465 (W.D. Wash. Mar. 4, 2024) (Cartwright, J.); *Amazon.com, Inc. v. Wong*, No. C19-990, 2024 WL 553695 (W.D. Wash. Feb. 12, 2024) (Robart, J.); *Amazon.com, Inc. v. Dai*, No. C21-170, 2023 WL 6233835 (W.D. Wash. Sept. 26, 2023) (Martinez, J.); *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217, 2022 WL 19000499 (W.D. Wash. Oct. 3, 2022) (Lasnik, J.); *Amazon.com, Inc. v. White*, No. C20-1773, 2022 WL 1641423

---

[1] Plaintiffs voluntarily dismissed the Doe Defendants. Dkt. No. 35. Therefore, all references to "Defendants" in this Order refer only to Defendants Chen, Li, Zhan, and Cui, unless otherwise specified.

(W.D. Wash. May 24, 2022) (Chun, J.); *Amazon.com v. Kurth*, No. C18-353, 2019 WL 3426064 (W.D. Wash. July 30, 2019) (Jones, J.).

A.  **The Plaintiffs**

Plaintiff Amazon.com, Inc. ("Amazon.com") is a Delaware corporation with its principal place of business in Seattle, Washington. Dkt. No. 23 ¶ 7; Dkt. No. 24 ¶ 7. Plaintiff Amazon.com Services LLC ("Amazon Services") is a Delaware company with its principal place of business in Seattle, Washington. Dkt. No. 24 ¶ 7. Amazon Plaintiffs own and operate the Amazon.com store (the "Amazon Store") and equivalent counterpart international stores and websites. Dkt. No. 23 ¶ 2; Dkt. No. 24 ¶ 2. Some products in the Amazon Store are sold directly by Amazon Plaintiffs, while others are sold by its third-party selling partners. *Id.*

Plaintiff Weber-Stephen Products LLC ("Weber") is a Delaware limited liability company with its principal place of business in Palatine, Illinois. Dkt. No. 23 ¶ 8; Dkt. No. 24 ¶ 8. Plaintiff Weber "is a leading worldwide designer, developer, and manufacturer of outdoor grills and accessories, including grill covers, sold under the Weber brand name." *Id.* Plaintiff Weber owns the registered trademark WEBER, Registration No. 1,464,197 (IC 011). Dkt. No. 23 ¶ 4; Dkt. No. 24 ¶ 4; *see also* Dkt. No. 23 at 27–28 (copy of registration certificate from the United States Patent and Trademark Office); Dkt. No. 24 at 23–24 (same).

B.  **The Allegations**

    1.    **The Amazon Store**

Between September 2017 and November 2021, Defendants Guizhen Li, Quiping Zhan, Changming Chen, and Yahui Cui established, controlled, and operated various selling accounts in the Amazon Store. Dkt. No. 23 ¶ 30; Dkt. No. 24 ¶ 28. To become a third-party seller in the Amazon Store, sellers are required to agree to the Amazon Services Business Solutions Agreement ("BSA"), which governs the seller's access to and use of Amazon Plaintiffs' services

and states Amazon Plaintiffs' rules for selling in the Amazon store. Dkt. No. 23 ¶ 33; Dkt. No. 24 ¶ 31. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. *Id.*; *see also* Dkt. No. 23 at 29–57 (BSA); Dkt. No. 24 at 25–99 (BSA effective Jan. 21, 2020, and Sept. 2, 2021).

Under the terms of the BSA, Amazon Plaintiffs identify the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of its policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Dkt. No. 23 ¶ 34; Dkt. No. 24 ¶ 32. The BSA requires the seller to defend, indemnify, and hold harmless Amazon Plaintiffs against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.*

The BSA also incorporates Amazon Plaintiffs' Anti-Counterfeiting Policy, which expressly prohibits the sale of counterfeit goods in the Amazon Store and describes Amazon Plaintiffs' commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store as well as the consequences of doing so. Dkt. No. 23 ¶ 35–36; Dkt. No. 24 ¶¶ 33–34; *see also* Dkt. No. 23 at 58–60 (policy); Dkt. No. 24 at 100–02 (same).

Finally, under the BSA, sellers agree that the information and documentation they provide to Amazon Plaintiffs in connection with their selling accounts—such as identification, contact, and banking information—will be valid, truthful, accurate, and complete. Dkt. No. 23 ¶ 37; Dkt. No. 24 ¶ 35.

**2.  Defendants' Selling Accounts**

Plaintiff Weber conducted multiple test purchases from Defendants' selling accounts and determined that the products are counterfeit and bear a counterfeit Weber trademark. Dkt. No. 23 ¶ 40; Dkt. No. 24 ¶ 38; *see also* Dkt. No. 23 ¶¶ 41–64 (selling accounts Ackary, Avantaway,

CCBAO, Grillike, HIMRIL, Hozoee, HZHJIY, MellSsa, Mustbuilty, Nexplas, Pship, and VIDVIE-US); Dkt. No. 24 ¶¶ 39–44 (selling accounts PDream/Phoniy, STW Hardware/Acover, and Mustudy). Plaintiff Weber determined that all the products "arrived in non-standard packaging" and "included product tags that were inconsistent with Weber's manufacturing specifications." *See, e.g.*, Dkt. No. 23 ¶ 42; Dkt. No. 24 ¶ 40. For some accounts, the products were also "made of substandard material that differs from the material Weber uses in its genuine grill covers." *See, e.g.*, Dkt. No. 23 ¶ 44. Through expedited discovery, Plaintiffs identified Defendants as the individuals who controlled certain financial accounts that were linked to, and received disbursements from, the above selling accounts. Dkt. No. 39 at 10–11; *see also* Dkt. Nos. 8, 18 (orders).

Defendant Chen is the accountholder for selling account Avantaway. Dkt. No. 23 ¶ 12. Defendant Li is the accountholder for selling accounts Avantaway, CCBAO, Grillike, HIMIRL, Hozoee, HZHJIY, MellSsa, Mustbuilty, Nexplas, and VIDVE-US. *Id.* ¶ 10. Defendant Zhan is the accountholder for selling accounts Avantaway and Pship. *Id.* ¶ 11. Defendants Chen, Li, and Zhan were connected by use of a common logistics provider and an individual identified as "Chen Luming." *Id.* ¶ 65. Defendants Li and Chen are also tied to a common bank account that received disbursements from the sale of counterfeit Weber products. *Id.* ¶ 66. Together, they sold a total of $3,351,039 in counterfeit Weber-branded products. Dkt. No. 41 (Garrett declaration) ¶ 4. Defendant Cui is the accountholder for selling accounts PDream (f/k/a Phoniy), Mustudy, and STW Hardware (f/k/a Acover). Dkt. No. 24 ¶ 9. Defendant Cui sold a total of $260,338 in counterfeit Weber-branded products. Dkt. No. 41 ¶ 4.

After Amazon Plaintiffs confirmed the counterfeit sales, they blocked the selling accounts from further sales in the Amazon Store and issued refunds to customers, for which Defendants have not reimbursed them. Dkt. No. 23 ¶¶ 69–70; Dkt. No. 24 ¶¶ 47–48.

C.      **Procedural History**

On November 9, 2021, Plaintiffs filed the lead action in this matter. *See Amazon.com, Inc. v. Ackary*. No. C21-1512, Dkt. No. 1 (W.D. Wash. Nov. 9, 2021). On May 18, 2022, Plaintiffs initiated three additional actions. *See Amazon.com, Inc. v. PDream*, No. 22-674, Dkt. No. 1 (W.D. Wash. May 18, 2022); *Amazon.com, Inc. v. Mustudy*, No. C22-675, Dkt. No. 1 (W.D. Wash. May 18, 2022); *Amazon.com, Inc. v. STW Hardware*, No. C22-676, Dkt. No. 1 (W.D. Wash. May 18, 2022). Plaintiffs later moved to consolidate the actions, which this Court granted. Dkt. Nos. 11–12. On June 13, 2023, Plaintiffs filed amended complaints in which Defendants Chen, Li, and Zhan (Dkt. No. 23), and Defendant Cui (Dkt. No. 24), were named.

Due to difficulty in serving Defendants by conventional means, Plaintiffs moved for alternative service by email, which this Court granted. Dkt. Nos. 27, 29. On July 19, 2023, Plaintiffs completed alternative service on all Defendants. Dkt. No. 30. After Defendants failed to appear, Plaintiffs moved for entry of default, which this Court granted. Dkt. Nos. 32–33. Plaintiffs now bring the instant motion for default judgment against Defendants. Dkt. No. 39.

II.     **LEGAL STANDARD**

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When considering whether to exercise discretion in entering default judgments, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the

Federal Rules of Civil Procedure. *Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### III. DISCUSSION

**A.  Jurisdiction**

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**1.  Subject Matter Jurisdiction**

The Court finds that it has subject matter jurisdiction in this matter based on Plaintiffs' claims for trademark counterfeiting and infringement and false designation of origin. 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338. The Court also finds that it has supplemental jurisdiction over Plaintiffs' claims under the WCPA and Plaintiff Amazon Services' breach of contract claim against Defendant Cui. 28 U.S.C. §§ 1332, 1367.

**2.  Personal Jurisdiction**

Washington's long-arm statute is coextensive with the reach of federal due process. RCW 4.28.180. Therefore, to exercise personal jurisdiction over a nonresident defendant, the defendant need only have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*

*v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). This means a "defendant's conduct and connection with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal quotation marks and citation omitted).

Accepting the allegations as true, the Court finds that it has personal jurisdiction over Defendants, who "affirmatively undertook to do business with Amazon [Plaintiffs], a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the Weber Trademark and which otherwise infringed [Plaintiff] Weber's IP." Dkt. No. 23 ¶ 15; Dkt. No. 24 ¶ 12. "Additionally, Defendants shipped products bearing counterfeit versions of the Weber Trademark to consumers in Washington." *Id.* In other words, Defendants "transacted business using a Washington state company as its sales platform, reached out to do business with Washington residents through that platform, and sold counterfeit products to Washington residents." *Wong*, 2024 WL 553695, at *2; *accord Sirowl Tech.*, 2022 WL 19000499, at *1. "Plaintiffs' claims arose from these contacts with Washington state." *Id.* Defendants also "entered into an ongoing contractual relationship with a Washington State company . . . and then violated that contractual relationship." *Dai*, 2023 WL 6233835, at *2.[2]

**B.    Propriety of Default Judgment**

Considering the *Eitel* factors, the Court finds that entry of default judgment is proper.

**1.    Factor One: Prejudice to Plaintiffs**

Without entry of default judgment, Plaintiffs will be prejudiced. Plaintiffs have attempted to litigate this case and vindicate their rights under federal and state law against Defendants. But Defendants have failed to appear or participate in this litigation despite being personally served.

---

[2] The Court thus need not reach Plaintiffs' alternative basis for personal jurisdiction: the presence of a forum selection clause in the BSA. *See* Dkt. No. 23 ¶ 16; Dkt. No. 24 ¶ 13.

"Without default judgment, Plaintiffs will suffer prejudice because they will 'be denied the right to judicial resolution' of their claims and will be 'without other recourse for recovery.'" *Wong*, 2024 WL 553695, at *3 (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)). This factor favors entry of default judgment.

**2.    Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of Complaint**

As an initial matter, Plaintiffs agree to voluntarily dismiss their claims for false advertising. *See* Dkt. No. 39 at 16 n.7. Therefore, those claims are DISMISSED.

Taking the remaining allegations in the complaints as true, Plaintiffs have sufficiently pleaded potentially meritorious claims. *See PepsiCo, Inc. v. Calif. Sec'y Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that these two *Eitel* factors require plaintiffs to state a claim on which they can recover). The Court reviews each claim in turn.

**a.    *Trademark Counterfeiting and Infringement***

Plaintiff Weber brings a claim for trademark counterfeiting and infringement against all Defendants. Dkt. No. 23 ¶¶ 71–77; Dkt. No. 24 ¶¶ 49–55. To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, Plaintiff Weber must show that Defendants used:

> (1) a reproduction, counterfeit, copy or colorable imitation of [its] registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Wong*, 2024 WL 553695, at *4 (quoting *Kurth*, 2019 WL 3426064, at *2). "Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *Id*.

(quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005)). Courts generally evaluate eight factors to determine whether confusion is likely:

> 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets.

*KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). "Where a defendant uses a counterfeit mark, however, courts both within and outside the Ninth Circuit presume a likelihood of consumer confusion." *Id.* (citing *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases)). A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, Plaintiff Weber alleges that it owns the WEBER trademark. Dkt. No. 23 ¶ 4; Dkt. No. 24 ¶ 4; *see also* Dkt. No. 23 at 27–28; Dkt. No. 24 at 23–24. Defendants advertised, marketed, offered, distributed, and sold, without authorization, counterfeit Weber grill covers in the Amazon Store using the Weber Trademark. Dkt. No. 23 ¶¶ 5, 75; Dkt. No. 24 ¶¶ 5, 53; *see also* Dkt. No. 23 ¶¶ 41–64 (identifying selling accounts operated by Defendants Chen, Li, and Zhan, and describing test purchases made from those accounts); Dkt. No. 24 ¶¶ 39–44 (identifying and describing the same as to Defendant Cui). Accepting these allegations as true, the Court finds that it is likely that a reasonable consumer would confuse the products sold through Defendants' selling accounts in the Amazon Store with genuine Weber products. Therefore, Plaintiff Weber has stated a claim against all Defendants for trademark infringement in violation of 15 U.S.C. § 1114(a), and the second and third *Eitel* factors weigh in favor of entry of default judgment on those claims.

      **b.**    *False Designation of Origin*

All Plaintiffs bring claims for false designation of origin under 15 U.S.C. § 1125(a)(1)(A) against all Defendants. Dkt. No. 23 ¶¶ 78–93; Dkt. No. 24 ¶¶ 56–72. To state a claim for false designation of origin, each Plaintiff must allege that Defendants "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Wong*, 2024 WL 553695, at *5 (quoting *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015)). "Although [Plaintiff Weber] is the trademark holder in this case and not Amazon.com, under § 1125(a), '"any person who believes that he or she is likely to be damaged" by a defendant's false advertising' may sue." *Dai*, 2023 WL 6233835, at *3 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

      (1)    <u>Plaintiff Weber</u>

Here, Plaintiff Weber alleges that Defendants sold counterfeit Weber products bearing the Weber Trademark. Dkt. No. 23 ¶¶ 5, 39, 81–82; Dkt. No. 24 ¶¶ 5, 37, 59–60. This unauthorized misuse of the Weber Trademark deceived customers into believing that the products were authentic when they were counterfeit. Dkt. No. 23 ¶ 82; Dkt. No. 24 ¶ 60. Defendants' unauthorized use of the Weber Trademark has undermined Plaintiff Weber's ability to safeguard its brand goodwill and reputation. Dkt. No. 23 ¶¶ 3, 6, 85; Dkt. No. 24 ¶¶ 3, 6, 63. Therefore, Plaintiff Weber has stated a claim for false designation of origin. *See Wong*, 2024 553695, at *5 (holding the same); *White*, 2022 WL 1641423, at *3 (same).

      (2)    <u>Amazon Plaintiffs</u>

Here, Amazon Plaintiffs allege that Defendants deceived them about the authenticity of the products they were advertising, marketing, offering, and selling, in violation of the BSA and

Amazon's Anti-Counterfeiting Policies. Dkt. No. 23 ¶¶ 89; Dkt. No. 24 ¶¶ 67; *see also* Dkt. No. 23 ¶¶ 19–27 (describing Amazon Plaintiffs' efforts to address the sale of counterfeit goods in their stores); Dkt. No. 24 ¶¶ 16–24 (same). Defendants' acts undermine and jeopardize consumer trust in Amazon Plaintiffs and the Amazon Store. Dkt. No. 23 ¶ 92; Dkt. No. 24 ¶ 70. Therefore, Amazon Plaintiffs have stated a claim for false designation of origin. *See Dai*, 2023 WL 6233835, at *3 (holding the same); *Sirowl Tech.*, 2022 WL 19000499, at *3 (same), *White*, 2022 WL 1641423, at *3 (same).

        c.    ***Violation of WCPA***

All Plaintiffs bring a claim under the Washington Consumer Protection Act ("WCPA") against all Defendants. Dkt. No. 23 ¶¶ 94–98; Dkt. No. 24 ¶¶ 73–77. To state a claim under the WCPA, Plaintiffs must allege "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Dai*, 2023 WL 6233835, at *4 (quoting *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Id.* (quoting *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)).

Here, "[b]ecause analysis of a CPA claim tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, Plaintiffs have already demonstrated the basis for their CPA claim." *Id.* Therefore, Plaintiffs have stated a claim under the WCPA.

####    d.    *Breach of Contract*

Finally, Plaintiff Amazon Services brings a claim for breach of contract against Defendant Cui. Dkt. No. 24 ¶¶ 78–83. To state a claim for breach of contract, Amazon Services must show: "(1) the existence of a contractual duty, (2) breach, (3) causation, and (4) damages." *Kurth*, 2019 WL 3426064, at *3 (citing *Larson v. Union Inv. & Loan Co.*, 168 Wn. 5, 10 P.2d 557 (1932)).

Here, Plaintiff Amazon Services alleges that Defendant Cui entered in the BSA, which incorporated by reference Amazon's Anti-Counterfeiting Policy, to which Defendant Cui agreed to be bound. Dkt. No. 24 ¶ 79. The BSA required Defendant Cui not to sell counterfeit products on the Amazon Store and to provide accurate information in connection with their selling accounts. *Id.* ¶¶ 81–82. Defendant Cui materially breached the BSA by selling counterfeit Weber products and providing inaccurate information. *Id.* As a result, Defendant Amazon Services paid $71,970 to refund customers who purchased counterfeit products. Dkt. No. 41 ¶ 6. Therefore, Plaintiff Amazon Services has stated a claim for breach of contract.

### 3.    Factor Four: Sum of Money at stake

Given the substantial sums that are at stake and the seriousness of the alleged misconduct, this factor favors entry of default judgment. See *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (stating that this factor accounts for "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct") (internal citations and quotation omitted).

### 4.    Factor Five: Possibility of Dispute of Material Facts

There is little possibility that the core, material facts are in dispute. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material

facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212. Not only have Defendants failed to appear in this action, but Plaintiffs have provided detailed evidence in support of their claims that is likely difficult to be rebutted. There is no evidence suggesting a dispute could arise. This factor favors entry of default judgment.

### 5. Factor Six: Whether Default Is Due to Excusable Neglect

There is no evidence that Defendants' failure to appear is due to excusable neglect. Indeed, Amazon Plaintiffs provide evidence that shows Defendants were properly served yet have still failed to appear in this action. *See* Dkt. Nos. 15–16. This factor favors entry of default judgment.

### 6. Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims on the merits. "Where, as here, a defendant fails to appear or defend itself in the action, however, the policy favoring decisions on the merits is not dispositive." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7). Defendants' decision not to appear in this case vitiates against this policy. This factor favors entry of default judgment.

Therefore, Plaintiffs' motion for default judgment is GRANTED IN PART as to all claims but the claims of false advertising, which are DISMISSED, and judgment is ENTERED as to the remaining claims.

## C. Damages

### 1. Statutory Damages for Plaintiff Weber Against All Defendants for Violation of the Lanham Act

"Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7). A plaintiff may recover statutory damages

...

of not less than $1,000 or more than $200,000 per infringed mark. 15 U.S.C. § 1117(c)(1). However, "[i]f the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of 'not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *7). "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes." *Id.* (quoting *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023)). "The plaintiff, however, 'is not entitled to a windfall.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *1). Because Plaintiff Weber has alleged the willful infringement of the Weber Trademark (*see, e.g.*, Dkt. No. 23 ¶¶ 6, 13, 67; Dkt. No. 24 ¶¶ 6, 10, 45), the Court may award up to $2,000,000 in statutory damages.

Here, Plaintiff Weber seeks maximum damages of $2,000,000 against Defendants Chen, Li, and Zhan. Dkt. No. 39 at 24. This award reflects evidence that these Defendants sold a total of $3,351,039 in counterfeit Weber-branded products. *Id.*; Dkt. No. 41 ¶ 4 (detailing aggregate sales by selling accounts). Plaintiff Weber also seeks damages of $781,014 against Defendant Cui—three times the aggregate sales of counterfeit products by this Defendant. Dkt. No. 39 at 25; Dkt. No. 41 ¶ 4.

The Court finds that Plaintiff Weber's request is appropriate and just. Defendants engaged in an intentional and coordinated effort to sell counterfeit Weber products in the Amazon Store, thus deceiving customers, misusing the Weber Trademark, depriving Plaintiff Weber of sales, and tarnishing the reputation of all Plaintiffs. *See* Dkt. No. 23 ¶¶ 5, 39, 81–82; Dkt. No. 24 ¶¶ 5, 37, 59–60. Plaintiff Weber's damages request is "consistent with the amounts awarded by other courts in this District for similar conduct, proportional to [Plaintiff's] actual damages, and sufficient to deter [Defendants] from further willful infringement, but is not so great as to result in a windfall for [Plaintiff]." *Dong*, 2024 WL 775000, at *8 (quoting *Wong*,

2024 WL 553695, at *8); *see also Dai*, 2023 WL 6233835, at *5 (awarding damages three times the aggregate sales of counterfeit products in the Amazon Store); *Sirowl Tech.*, 2022 WL 19000499, at *5 (same); *White*, 2022 WL 1641423, at *5 (same).

Therefore, the Court AWARDS Plaintiff Weber $2,000,000 in statutory damages against Defendants Chen, Li, and Zhan, jointly and severally, and $781,014 against Defendant Cui, for a total award of **$2,781,014**.

### 2. Actual Damages for Plaintiff Amazon Services Against Defendant Cui for Breach of Contract

In addition to statutory damages for violating the Lanham Act, Plaintiff Amazon Services also seeks actual damages against Defendant Cui for breach of contract. Dkt. No. 39 at 26–27. "The general measure of damages for breach of contract is that the injured party is entitled to: (1) recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a pecuniary position as he would have had if the contract had been performed." *Entry Select Ins. Co. v. Silver Arrow Cars, Ltd.*, No. C19-0598, 2020 WL 1847749 (W.D. Wash. Apr. 13, 2020) (citing *Diedrick v. Sch. Dist. 81*, 87 Wn.2d 598, 610 (1976)). Here, Plaintiff Amazon Services seeks $71,970 in actual damages that it suffered as a result of Defendant Cui's breaches of the BSA. Dkt. No. 39 at 26–27.

The Court finds that Plaintiff Amazon Services's request is appropriate and just. Defendant Cui agreed to "defend, indemnify, and hold harmless Amazon . . . against any . . . loss [or] damage . . . arising from or related to . . . [Defendant's] Products, including the . . . refund . . . thereof." Dkt. No. 24 at 29. Plaintiff Amazon Services issued refunds to customers who had purchased counterfeit Weber products through the PDream and STW Hardware selling accounts, in the total of $71,970. Dkt. No. 41 ¶ 6. Thus, Plaintiff Amazon Services's damages request is consistent with the amount it is entitled to under the BSA.

1    Therefore, the Court AWARDS Plaintiff Amazon Services the requested total amount of

2    **$71,970** in actual damages against Defendant Cui.

3    **D.    Permanent Injunction for All Plaintiffs**

4    The Lanham Act authorizes "the 'power to grant injunctions accordingly to principles of

5    equity and upon such terms as the court may deem reasonable, to prevent the violation of any

6    right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir.

7    2006). The WCPA similarly authorizes injunctions against violations of the statute. RCW

8    19.86.090.

9    In trademark cases, courts apply "traditional equitable principles" in deciding whether to

10   grant permanent injunctive relief. *Reno*, 452 F.3d at 1137 (quoting *eBay Inc. v. MercExchange,*

11   *LLC*, 547 U.S. 388, 393 (2006)). That is, a plaintiff must demonstrate: "(1) that it has suffered an

12   irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

13   to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

14   and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

15   disserved by a permanent injunction." *Id.* at 1137 n.11 (quoting *eBay*, 547 U.S. at 391). A

16   trademark holder is entitled to a rebuttable presumption of irreparable harm upon a finding of a

17   violation. 15 U.S.C. § 1116(a).

18   Here, Plaintiffs seek a permanent injunction enjoining Defendants from their infringing

19   uses of the Weber Trademark. Dkt. No. 39 at 27–31. Specifically, Plaintiffs seek an order:

> permanently enjoining Defendants, their officers, agents, servants, employees, and all others in active concert or participation with them, who receive actual notice of this order, from:
>
> a. selling counterfeit or infringing products in Amazon's stores;
>
> b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

        c. manufacturing, importing, distributing, offering to sell, or selling any product using the Weber brand or trademark, or which otherwise infringes Weber's intellectual property, in any store or in any medium; and

        d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

*Id.* at 27. Plaintiffs argue that all four *eBay* factors weigh in favor of a permanent injunction. *Id.* at 39–31. The Court agrees.

    First, Plaintiffs are entitled to a rebuttable presumption of irreparable harm, as they have alleged (and the Court accepts as true) that Defendants have committed trademark infringement and false designation of origin, among other claims. *See* 15 U.S.C. § 1116(a). Defendants present no evidence to rebut this presumption, and the Court finds no such evidence in the record.

    Second, remedies at law are inadequate to compensate Plaintiffs, who have alleged harm to their reputation and goodwill. "Harm resulting from lost customer goodwill 'is neither easily calculable, nor easily compensable' and thus cannot be remedied by a monetary award." *Dong*, 2024 WL 775000, at *10 (quoting *Wong*, 2024 WL 553695, at *10). Moreover, Defendants' failure to appear "suggests that their infringing behavior may continue absent an injunction." *Id.* (citing *Wong*, 2024 WL 553695, at *10).

    Third, the balance of hardships strongly favors Plaintiffs. Without an injunction, Plaintiffs may suffer further harm to their reputation through counterfeit sales. "On the other hand, because Defendants never had a right to infringe [Plaintiff Weber's] trademark[ ] in the first place, they will suffer no harm from an injunction prohibiting unlawful infringement in the future." *Id.* (citing *Wong*, 2024 WL 553695, at *10); *see also T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012) (holding defendants had "no legitimate interest in" continuing deceptive conduct).

Finally, a permanent injunction would serve the public interest "in protecting trademark holders' rights and minimizing the confusion caused by the presence of counterfeit products in the marketplace." *Wong*, 2024 WL 553695, at *10 (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014)).

Therefore, the Court PERMANENTLY ENJOINS Defendants on the terms requested.

### IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction Against Defendants (Dkt. No. 39) is GRANTED.

(2) Judgment is ENTERED as to all claims except for Plaintiffs' claims for false advertising, which are DISMISSED.

(3) Plaintiff Weber is AWARDED statutory damages of **$2,000,000** against Defendants Chen, Li, and Zhan, jointly and severally, and **$781,014** against Defendant Cui.

(4) Plaintiff Amazon Services is AWARDED actual damages of **$71,970**, against Defendant Cui.

(5) Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, are PERMANENTLY ENJOINED from:

    (a) selling counterfeit or infringing products in Amazon's stores;

    (b) selling counterfeit or infringing products to Amazon or any Amazon affiliate;

    (c) manufacturing, importing, distributing, offering to sell, or selling any product using the Weber brand or trademark, or which otherwise infringes Weber's intellectual property, in any store or in any medium; and

        (d)      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

(6)    The Court RETAINS jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

(7)    Plaintiffs' counsel is DIRECTED to serve a copy of this Order and Injunction on Defendants' last known email addresses registered with Payoneer, which Plaintiffs used to complete service.

Dated this 26th day of April 2024.

Tana Lin
United States District Judge